IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

FILED
NOV 16 2021
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RICHARD M. SMEGO,

    Plaintiff,

v.                                                  Case No: _____

LIBERTY HEALTHCARE CORPORATION;
GREG DONATHAN, PROGRAM DIRECTOR;
GREGG SCOTT, PROGRAM DIRECTOR;
DR. SHAN JUMPER, CLINICAL DIRECTOR:
LOUIS SISTO, PRIMARY THERAPIST;

    Defendants.

## COMPLAINT:

This complaint asserts a civil rights action pursuant to Title 42 of the United States Code, Section 1983 for the violation of certain of the Plaintiff's rights as guaranteed him under the United States Constitution and the Illinois Constitution as well as numerous and various federal and state codes and statutes.

### SECTION ONE
### JURISDICTION:

Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(3) and 42 U.S.C. §1983. Herein Plaintiff sets forth how each defendant or party in section two (2) was acting under color of state law in section five (5). The Court has supplemental jurisdiction over the Plaintiff's state law tort claim under 28 U.S.C. §1367.

## SECTION TWO
## THE PARTIES:

### A. The Plaintiff:

Richard M. Smego
IL Dept Of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681-4042
217-322-3204
PRO SE

### B. The Defendants:

1. Liberty Healthcare Corporation
   C/O IDHS TDF
   17019 County Farm Road
   Rushville, Illinois 62681-4042
   217-322-3204
   PRO SE

   Liberty Healthcare Corporation is sued in both its official and individual capacity. At all times pertinent hereto, Liberty Healthcare Corporation was acting under the Color of State Law.

2. Greg Donathan, Program Director
   Illinois Department of Human Services
   Treatment & Detention Facility
   17019 County Farm Road
   Rushville, Illinois 62681-4042
   217-322-3204

   Defendant Greg Donathan is sued in both his official and his individual capacities. At all times pertinent hereto, Defendant Greg Donathan was acting under the Color of State Law.

3. Gregg Scott, Program Director
   IL Director of Human Services
   Treatment & Detention Facility
   17019 County Farm Road
   Rushville, Illinois 62681-4042
   217-322-3204

   Defendant Gregg Scott, former program director, is sued in both his official and his individual capacities. At all times pertinent hereto, Defenant Gregg Scott was acting under the Color of State Law.

4. Dr. Shan Jumper, Clinical Director
   IL Dept Of Human Services
   Treatment & Detention Facility
   17019 County Farm Road
   Rushville, Illinois 62681-4042
   217-322-3204

   Defendant Shan Jumper is sued in both his official and individual capacities. At all times pertinent hereto, Defendant Jumper was acting under the Color of State Law.

5. Louis Sisto, Primary Therapist
   IL Dept Of Human Services
   Treatment & Detention Facility
   17019 County Farm Road
   Rushville, Illinois 62681-4042
   217-322-3204

   Defendant Sisto is sued in both his official and his individual capacities. At all times pertinent hereto, Defendant Sisto was acting under the Color of State Law.

## SECTION THREE
## LITIGATION HISTORY:

The Plaintiff has not brought any other federal, or state Complaints dealing with the same facts, allegations, or parties raised in any portion of this Complaint.

## SECTION FOUR
## EXHAUSTION OF ADMINISTRATIVE REMEDIES:

The Plaintiff is not a prisoner, is not charged with or awaiting charges for any alleged crime of any type and does not meet the requirements as set forth by the PLRA for exhaustion of Administrative Remedies before bringing a complaint.

Further it has been over ten (10) years since Plaintiff has been charged with or accused of any crime whatsoever.

The Plaintiff has submitted written journals complaining about the conditions in this complaint. The Defendants have received many other grievances from the population and have not taken any corrective action whatsoever. This process is complete and not relevant as if this Plaintiff were a prisoner.

## SECTION FIVE
## STATEMENT OF FACTS AND ALLEGATIONS:

1. The Plaintiff, RICHARD M. SMEGO, has been civilly committed to the Rushville Treatment and Detention Facility, ("TDF"), which is operated by the Illinois Department of Human Services, ("IDHS"), for the sole purpose of providing treatment to individuals that have been detained or committed under the Illinois Sexually Violent Persons Act ("SVPA"), 725 ILCS 207/1 et seq. Individuals committed under the SVPA have been criminally convicted and served their entire criminal sentence within the Illinois Department of Corrections, ("IDOC"), and upon the completion of said individual's criminal sentence they are then transferred to the TDF to complete treatment.

2. While the SVP program at Rushville has some similarity to the Sexually Dangerous Persons Act, ("SDPA"), and the program operated at the Big Muddy River Corrections Center within IDOC. All Sexually Dangerous Person ("SDP") under the Sexually Dangerous Persons Act 725 ILCS 205/1 et seq., has committed a criminal sexual offense, been charged with a felony, and those felony charges are held in abeyance during the treatment he receives for the mental illness he has been detained under. As such, Sexually Dangerous Persons housed within the Bid Muddy River Center are considered prisoners for the purpose of the PLRA because they are in custody while "accused of ... violations of criminal law"). See Kalinowski v Bond, 358 F. 3d 978 (7th Cir. 2004) as it relates to the SDP program and PLRA generally.

3. The Plaintiff is not detained on criminal charges, he is not in custody accused of violations of criminal law and as recently as 2020 the Seventh Circuit affirmed that this Plaintiff is not a prisoner within the meaning of the PLRA. The Plaintiff cites Shuhaiber v. Illinois Department of Corrections, 903 F.3d 1167 in which once Shuhaiber entered DHS's custody on an immigration detainer he ceased being confined for any violation of criminal law. The Plaintiff in this case is not under the PLRA and is not required to exhaust remedies before bringing suit.

4. The Plaintiff has been a patient at the TDF since June of 2006. The purpose of Plaintiff's commitment, or detention, is a rehabilitative civil remedy, not punitive, that has been employed for treatment purposes. It has been an established professional and official understanding that Plaintiff's confinement cannot punish, it cannot become a mechanism for retribution or general deterrence, and Plaintiff's duration of commitment must bear some reasonable relation to the purpose for which he is committed. See Kansas v. Hendricks, 521 U.S. 346(1997); Bell v. Wolfish, 441 U.S. 520,535(1979); Hughes v. Dimas, 837 F.3d 807(7th Cir.2016)

5. The TDF like the rest of the world has been exposed to the Covid-19 virus, pandemic, and various mandates and issues relating to the ongoing Covid-19 concerns. All treatment facilities, hospitals, extended care living facilities, and so on had to face the challenges that Covid-19 added to there daily operations. The TDF and herein named defendants repeatedly chose to not provide the Plaintiff any form of treatment whatsoever ignoring the fact he is committed to the IDHS by Court Order under the SVPA for the purpose of receiving treatment.

6. A partial history created from memory and without the review of any TDF records is:

```
3/18/20  Therapy group resumes, no more than 5 in a room.
3/30/20  Ancillary/skill groups suspended
4/27/20  All therapy groups suspended
7/06/20  Resume all sex offender specific groups
7/20/20  Resume ancillary/skill groups
8/11/20  All therapy groups suspended
8/24/20  Resume all therapy groups
11/19/20 all groups and individual contacts between residents/staff suspended
12/28/20 Resume sex offender specific treatment 5 persons to a room
1/14/20  Group size increased to 10 persons per room
2/09/21  All groups suspended facility wide
3/01/21  Resume sex offender specific treatment 5 to a room.
8/16/21  STA announces Quarantine on unit, all groups suspended
9/20/21  Plaintiff receives "Notice of returning to group and twenty minutes
         into a group session on 09/28/21 STA enters the group room and
         announces another quarantine sending Plaintiff back to his unit.
10/18/21 Plaintiff remains on quarantine status out of group and without
         movement to yards and gyms, however staff no longer say quarantine.
```

Plaintiff recalls roughly 30 days of no group between April and May of 2021, as

well as many quarantines that only applied to his unit, Baker, such as November 7th and 8th of 2020. While other dates and times would have taken place when Only the Plaintiff's Unit, group, or Treatment Team didn't hold groups because of Covid-19 issues, these records and information would be maintained by the IDHS at the TDF.

7. Plaintiff alleges the herein named defendants provided no treatment whatsoever for the Plaintiff in excess of 229 days spanning multiple shutdowns or "quarantines" at the facility. While the Plaintiff could somewhat understand a dedicated professional having a knee-jerk reaction to the overwhelming amount of news coverage and attention given Covid-19 and the "Pandemic" as it would have related to the first such of these quarantines at the TDF as the Defendants' were after all doing all of this for the first time. Plaintiff cannot for any reason understand why they still don't have a plan, why they still aren't providing a minimum level of treatment, or why Plaintiff's "therapist" is working in the dietary department producing food trays instead of being concerned with the Plaintiff's treatment for all the reasons he raised in paragraph 4 above.

8. The "culture" that exist at the TDF is such that Plaintiff's treatment and advancement in same is not a concern for those that work within the facility itself. The Plaintiff is housed within a maximum security prison facility, under 24 hour a day security surveillance, often confined to the prison cell he lives in and the part of the civil scheme that made it constitutional was that this Plaintiff was here for, and received, Sex Offender Specific Treatment and any other treatment he needed to effect his timely release. See paragraph 4 above.

9. The Plaintiff has been prevented from making progress in treatment as the Administration, agency, and professionals charged with providing Plaintiff's Court Ordered Treatment have failed to act in a manner a reasonable professional would agree is proper or in any way assisting the Plaintiff's with his serious medical needs. In addition to all other issues with the Defendants bad faith

efforts to treat this Plaintiff, persisting on a course of treatment that is not effective or provides no relief is deliberate indifference.

10. Treatment at the TDF is provided under contract by Liberty Healthcare Corporation. Treatment is in theory defined, has structure, and consistent, if one were to rely upon public information. This is not however the case. If the Plaintiff were allowed to actually be allowed to participate in treatment now he would be "re-presenting" his "Top Five Distortion" that were already done, signed off on as completed and on his Treatment Objective Checklist ("T.O.C.") as of 2/12/15. The Plaintiff however transferred from one team to another and the team he went to, the Blue Team, does not consider the work his former treatment team had him do as valid, or "up to Blue Team Standards". So as a result, Plaintiff has been at a stand still waiting the ability to redo completed and accepted group work that has been part of Plaintiff's Clinical record since 2015 as complete and done correctly. As a matter of Factual reference, Plaintiff completed his top five distortion with the Red Team Group leader and not just a clinical therapist.

11. Liberty Health Care Corporation provides the Treatment services that the Plaintiff is required to participate in. The Program Director, Greg Donathan, currently oversees daily facility operations and replaced Gregg Scott who was the Program Director for the first few quarantines and treatment suspensions. It is Dr. Shan Jumper that serves as the Clinical Director at the facility for Liberty Health Care Corporation. It is these Defendants that have directed the policies and actions of those within the TDF that have prevented Plaintiff from receiving any treatment.

12. Plaintiff's "Primary Therapist" left the employment of Liberty Healthcare Corporation on or about August 13, 2021. Since that date Plaintiff has not had assigned to him a Primary Therapist, or at least he has not been advised of such an appointment as of October 18, 2021, when this complaint was written.

13. The Defendants continue to insist that the quarantine(s) are all out of true caution and actual penological need. Plaintiff maintains that this is simply not the truth. Program Director, Greg Donathan, a named defendant in this suit is responsible for the daily operations of this facility and has final approval for everything that happens within it. If these so-called Covid-19 quarantines are all taken out of caution and penological needs or interest, where does this need exist when it comes to daily facility operations.

14. Plaintiff's living unit remains unsanitary, daily cleaning assignments are not performed and security therapy aides simply sign off on task sheets left on the day room counter indicating tasks like floor care, janitor, or flu cleaner have actually been done. Food service is conducted without hair nets, gloves, or other required safety and sanitation, or P.P.E.s while under quarantine and staff takes no corrective action as Defendants Donathan and Scott failed to provided for safety and sanitation during the "Covid-19 Quarantines". Baker unit, the living unit that the Plaintiff lives on has no "Flu Cleaner". The Flu Cleaner is the Resident assigned to the task of sanitizing surfaces keeping the residents safe from Covid-19 and harmful effects from living in such a dense population of persons.

15. The Floor on Plaintiff's unit remains filthy to the point he will often stick to the floor and stains are always visible, yet staff sign off on the sheet indicating this task in done. The Janitor task of cleaning tables and microwaves is not done and food, stains, crumbs, all manner of clearly visible signs indicate no cleaning is taking place. While Plaintiff is tempted to perform the Flu Cleaner task himself, it creates a safety concern for the Plaintiff if he was to do this as the other Residents on the unit would view this as Plaintiff calling attention to them not performing their task. Plaintiff would place himself at risk for physical harm to impose himself on the assigned task of other residents and considerable historical background exist to support this conclusion reached by Plaintiff.

16. The Plaintiff is subjected to unsafe and unsanitary conditions that do nothing to prevent the spread of Covid-19, or any other "Flu" like issues. If the Defendants in this matter had any penological interest in providing treatment and keeping Plaintiff safe they would make certain the facility is clean and that all staff use required PPEs. It is a common experience to witness Security Therapy Aides entering and leaving the living unit, or overseeing medication lines without the use of face mask, shields, or other required PPE while the Plaintiff is being denied treatment over Covid related issues, or quarantines.

17. Plaintiff's issues are not limited the lack of sanitation and cleaning, or attention to Covid-19 protocols during any given pandemic. Referencing Memorandum 85R-21 dated October 8, 2021 from Dr. Jumper, Clinical Director he admits that "This past 18 months has been extremely challenging for everyone with respect to limitations we all endure due to the COVID-19 pandemic. Not being able to meet for groups due to facility quarantines is something the clinical team is concerned about as I know many of you are as well." While Plaintiff is not certain how Dr. Jumper arrived at 18 months of lost treatment when the Quarantines began at the end of 2019 and it is now October of 2021 when this Complaint is being drafted. By Plaintiff's count, it would appear the quarantines have exceeded 22 months and counting. (exhibit 1)

18. When Plaintiff considers Dr. Jumper's under-estimated 18 months of no treatment in memorandum number 85R-21, he considers the findings of the court in Howe v. Godinez Case No.14-cv-844-SMY Sept 6, 2021 [legale.com/decison/infdco20210908779] that seem to indicate while the SDP population at Big Muddy was not receiving group therapy since March of 2020 due to COVID-19 restrictions the SVP program at Rushville consistently fell within the acceptable ranges of SOCCPN in various aspects of its program, roughly five (5) hours of treatment a week. Unlike the SDP program, the SVPs at the Rushville TDF were not provided any homework to complete to further facilitate the tools and critical thinking learned in group. (exhibit 1)

19. The Defendants in this case have consistently maintained that Group Therapy is the only viable means of treating SVPs in the State of Illinois. All attempts at altering or changing the program in any way have been met with bitter resistance and the professional outcries that Group Therapy in which Residents talk through their issues and work piece by piece is the only route treatment can take at the TDF. Research on this subject will likely bring forth many court cases, testimony, and affidavits attesting to these very facts over and over again for many years. Yet, despite knowing this information for themselves, Liberty Healthcare Corporation, the TDF Administration, the Illinois Department of Human Services, nor any person involved in this program took any action what-so-ever to provide some form of homework assignments Plaintiff could engage in while under the admitted 18 months of quarantine Dr. Jumper writes about in memo # 85R-21.

20. The Defendants in the suit, most notable Dr. Jumper issued Memorandum # 85R-21 indicating that "clinical staff encourages all resident to watch this movie as it begins streaming repeatedly on the facility movie channel beginning later this afternoon...we recommend you journal or record your thoughts on the film in general ...submit these to your team for review now, share them with your peers, or bring them to group for discussion:" When one reviews this memorandum 85R-21 it is clear that it does not address sex offender specific treatment in any manner. Further, creating a journal about a movie to bring to group once groups re-start is not actually doing treatment now. Why would this "movie watching" satisfy the five hours a week standard of treatment Plaintiff raised in paragraph 18 above. Further, if Plaintiff did create a movie journal that had nothing whatsoever to do with his sex offender treatment as evidence by the fact this easily acceptable "treatment tool" had never before in the history of the program been part of Plaintiff's required treatment, he would be setting himself up for a potential cycle of repeatedly re-writing movie journal(s) to satisfy residents in group and their feedback as he is now doing with distortions work he had already completed. See paragraph 10 above.

21. The Plaintiff is entitled to relief in this suit as he has been denied treatment for an extended period of time over what is related to alleged COVID-19 concerns. The TDF is operated by the IDHS as a treatment facility for the sole purpose of providing treatment to those individuals detained or committed under the SVP Act. It is beyond any reasonable review of professional judgment to withhold court ordered treatment for what has already been defined repeatedly within the courts as a serious medical need.

22. Plaintiff's release from the TDF can only be gained by way of evaluation based almost completely in predictive validity. An evaluator assigned by the Court evaluates Plaintiff's progress in group as well as dynamic risk factors and actuarial instruments such as the STATIC 99 that incorporates not changeable data into every evaluation relating to criminal offense(s) no matter how old an offense is and how much treatment has been completed.

23. Plaintiff's last known and recently relieved primary therapist Louis Sisto, failed to update Plaintiff's clinical records with his up to date group work when he was able to accomplish some. Plaintiff repeatedly requested that Mr. Sisto update his TOC to include the fact he completed his first 90 days of journaling for phase three, that he completed phase two of treatment, and other information onto the TOC before he left the employment of the TDF and Liberty Healthcare and he filed to do so. Mr. Sisto's actions while he served as Plaintiff's Primary therapist by failing to keep his clinical records up-to-date, combined with the never ending quarantines that suspended all treatment created a never ending cycle in which Plaintiff could not demonstrate any progress that would show up in his clinical records that an evaluator could possible rely upon for his release. What information does exist seems to be incorrect or quotes other residents made and have been attributed to the Plaintiff as if he said or did these things himself. Nor does the Plaintiff think re-doing completed work helpful. ¶-10 above.

24. The Plaintiff is entitled to relief because actual treatment of the civilly confined is what separates commitment from punishment and incarceration. Without adequate treatment designed to effectuate ultimate release, a civil commitment program is nothing more than a de facto prison disguised as a mental health facility. The Defendants in this suit shut the treatment program down repeatedly for "quarantine" related to COVID-19. Under what theory does a quarantine mean it is not possible to conduct actual treatment? No way possible all mental health facilities suspended treatment as often and as easily as the defendants did in this case.

25. The Defendants may allege that they pained over the decision and no visible ways of conducting treatment came to to forefront in the 18 months Dr. Jumper claims he has thought about it. Well if the quarantines are about keeping the residents on the units separate from the residents on other units why not simply conduct all groups on the living units where the residents live. Each living unit has no less than three group room on it. Why couldn't the "Clinical Team" or therapist, send out homework through the mail, or deliver it in person, have it turned in and grade it and keep treatment running, moving forward in a predictable fashion, something that an evaluator could look at and allow for progress. How is it that after two years of quarantines the Administrations greatest treatment concept under the COVID-19 conditions is still to have clinical staff working in Dietary and the Laundry Department.

26. An interesting question of law arises as the SDP program in Big Muddy also stopped all treatment and held those individuals in what would amount to a de facto prison. The SDP population in that program however had not served their prison sentences and their felony charges are held in abeyance. The population of the Rushville TDF, SVP program have completed their criminal sentences and do not have charges pending. Despite this fact the Defendants suspended all treatment again and again, provided no avenue of advancement for Plaintiff's treatment and held him in a de facto prison unable to improve his mental state as required by law.

27. Plaintiff seeks the relief of being made whole again through actual treatment as required by the Court order he was committed under. Plaintiff has been held without treatment for many months and all didactic groups, or non-phase specific treatment and skills groups have been suspended and not available to Plaintiff for roughly 22 months. Plaintiff has not had a primary therapist, the clinical staff member he would approach with his concerns or needs since August 13, 2021, over 60 days.

28. Plaintiff maintains that simply turning treatment back on is not enough to correct the damage done or injury inflicted by the defendants in this suit. The lost hours of treatment, the "processing time" that is required to conduct treatment must be made up and the non-phase specific groups not currently provided by the facility must also be made available in a fashion that will allow for their timely completion.

29. The Defendants in this case injured Plaintiff when the stopped providing any treatment whatsoever for his serious medical need he was sent to the TDF to receive treatment for. These injuries were made worse when it became clear the Plaintiff was now a prisoner in a de facto prisoner sitting month after month in an identical prison cell as his criminal counter part within the IDOC. Instead of providing some form of instruction or information as to how or when the facility may try to restore treatment and avenues that Plaintiff may make up for lost time TDF staff walk the units complaining about having to get vaccinated, deliver meals, or answer questions about what is going on within the facility. A standard response provided Plaintiff in regards to quarantines and scheduling group again is that the Plaintiff is serving a life sentence anyway as he has no outdate.

30. The Plaintiff is entitled to relief as he is denied all treatment and has been for to long a period for any professional to justify as meeting a penological interest. These treatment suspension have injured Plaintiff bring forth additional emotional trauma and ongoing injury as set forth above.

## SECTION SIX
### RELIEF REQUESTED:

**WHEREFORE**, for all the reasons and violations complained of above, the Plaintiff, RICHARD M. SMEGO, pro se, PRAYS that this honorable Court enters and issues an Order:

1. Finding and enunciating a declaratory judgment that the events and actions complained of above violated the Fourteenth Amendment of the United States Constitution.

2. Awarding Plaintiff reasonable cost and attorneys fees.

3. Awarding Plaintiff Compensatory Damages in the amount of Fifty Thousand Dollars, with said damages to be proven up at trial or in a hearing. ($50,000.00)

4. Awarding Plaintiff punitive damages in excess of one dollars ($1.00) with said damages to be proven up at trial or in hearing.

5. Awarding Plaintiff permanent declaratory and injunctive relief.

6. Awarding Plaintiff any further such relief that the Court deems just, fit, and proper at time of trial.

Respectfully submitted,

By: *[signature]*

Richard M. Smego, Plaintiff
IL Dept Of Human Services
Treatment & Detention Facility
17019 County Farm Road
Rushville, Illinois 62681-4042
PRO SE